IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-565

 No. COA20-915

 Filed 19 October 2021

 Alamance County, Nos. 17CRS052988, 19CRS001073, 19CRS050810

 STATE OF NORTH CAROLINA

 v.

 CHRISTOPHER NEAL

 Appeal by Defendant from judgments entered 26 June 2019 by Judge David T.

 Lambeth Jr. in Alamance County Superior Court. Heard in the Court of Appeals 24

 August 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Mary
 Carla Babb, for the State-Appellee.

 Meghan Adelle Jones for Defendant-Appellant.

 COLLINS, Judge.

¶1 Defendant Christopher Neal appeals from judgments entered upon jury

 verdicts of guilty of discharging a weapon into an occupied moving vehicle, assault

 with a deadly weapon with intent to kill, attempted first-degree murder, and

 possession of a firearm by a felon. Defendant argues that the trial court erred in its

 instructions on constructive possession and attempted first-degree murder, and that

 his due process rights were violated by a year-long delay in processing his appeal.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 We discern no error, much less plain error, in the constructive possession instruction;

 no plain error in the attempted first-degree murder instruction; and no violation of

 Defendant’s due process rights.

 I. Factual and Procedural Background

¶2 Defendant was indicted for discharging a weapon into a moving vehicle,

 assault with a deadly weapon with intent to kill, attempted first-degree murder, and

 possession of a firearm by a felon. The case came on for trial on 10 June 2019.

¶3 The evidence at trial tended to show the following: Carliethia Glover, a social

 worker for Rockingham County Department of Social Services (“DSS”), received a

 report from Child Protective Services (“CPS”) on 12 June 2017 that a premature

 infant, whose umbilical cord had tested positive for the presence of marijuana, had

 recently been born at a hospital in Greensboro. The infant is the child of Defendant

 and Latonya Whetsell. Glover and her colleague Emily Pulliam visited the infant on

 13 June 2017 at the hospital. Glover and Pulliam then travelled to Reidsville to the

 parents’ address listed on the CPS report. At the listed address, Glover and Pulliam

 encountered Wilbert Neal (“Wilbert”), Defendant’s father. Wilbert told Glover that

 Defendant and Whetsell sometimes lived at his home, but were not living there at

 that time. Wilbert directed them “around the corner” to a mobile home, which he

 owned and in which he allowed the couple to stay with their children. Unable to

 locate the mobile home, Glover called the telephone number listed on the CPS report
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 for Whetsell. When Whetsell answered, Glover told Whetsell that Glover would need

 to see Whetsell’s two other children that day.1 Whetsell was angry and said, “get this

 phone before I have to cuss her out.” Defendant got on the phone and told Glover

 that she would not be seeing his children. Glover then gave Pulliam the phone.

 Defendant yelled at Pulliam, “I’m going to see your M[other] F[***ing] punk A[**].”

¶4 As Glover and Pulliam continued driving through the neighborhood, Pulliam

 spotted a man, whom they later determined was Defendant, outside on the phone.

 Shortly thereafter, Glover and Pulliam noticed a blue BMW SUV following them. The

 BMW chased them down a highway, into a parking lot, and down a street. Pulliam

 saw a black male, whom she recognized as the same man who had been outside on

 the phone, “holding something up towards the car,” but could not tell “at that point

 in time what was being pointed at us.” Eventually they lost the BMW in traffic, and

 Glover stopped to telephone law enforcement.

¶5 After the chase had ended, Defendant appeared at DSS and confronted social

 worker Jan Odum about the agency’s involvement with his children. Odum had

 previously been involved with Whetsell when Odum was the foster care social worker

 for Whetsell’s three oldest children. At trial, Odum characterized Defendant’s

 1 Whetsell has three children with Defendant, including two who lived with Whetsell

 and the premature infant. Whetsell also has three children who were not fathered by
 Defendant and who had previously been taken into custody by DSS. Whetsell had not been
 cooperative in the agency’s efforts to return them to her.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 demeanor that day as “angry,” “loud,” “menacing,” and “threatening.” A detective

 who worked at DSS was able to calm Defendant down, and Melissa Kaneko, Glover’s

 supervisor at DSS, explained DSS’s involvement to Defendant. Defendant told DSS

 that he and Whetsell were no longer a couple and suggested that she had previously

 made false allegations against him.

¶6 According to Whetsell’s testimony, her relationship with Defendant had been

 tumultuous. During one argument, Defendant pistol-whipped her in the head with a

 nine-millimeter handgun that belonged to her. She received staples in her head as a

 result. She testified at trial that it was Defendant who had hit her and that she had

 refused to tell police who had hit her because she did not want him to get into trouble.

 During another argument, Defendant chased her on a highway in his car and pointed

 the handgun at her.

¶7 After the chasing incident, Whetsell sought a Chapter 50B domestic violence

 protective order against Defendant. In her 50B complaint, Whetsell detailed the

 above altercations. Additionally, she took out a warrant for Defendant’s arrest for

 assault by pointing a gun. Whetsell did not pursue the 50B order because she “really

 didn’t want him in trouble,” and the assault charge was dismissed when she failed to

 appear in court.

¶8 The same afternoon that Glover and Pulliam had attempted to visit Defendant

 and Whetsell at the mobile home, Glover and Pulliam returned to DSS and discussed
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 with staff members what to do about Whetsell’s two children who remained in her

 care. Because there had been a previous 50B complaint filed against Defendant, it

 was decided that Glover needed to speak to Whetsell and see the children that same

 day, and, if Whetsell confirmed the allegations against Defendant were true, that the

 children should not remain in the home that night. Accompanied by law enforcement

 officers, Glover and Pulliam drove a county car to the mobile home.

¶9 Glover asked Whetsell about her drug use and any incidents between her and

 Defendant that might make the home dangerous. Whetsell claimed there had been

 “some kind of misunderstandings” between Defendant and her, and confirmed that

 someone did pistol-whip her, but claimed it was not Defendant and that she was just

 confused. Whetsell testified at trial, however, that the allegations in her 50B

 complaint about him were true, but that she had lied to Glover to “protect” Defendant

 and keep DSS from taking her children.

¶ 10 Glover asked Whetsell if there was a relative or friend with whom the children

 could stay temporarily. Whetsell replied that her children were not going anywhere.

 Glover telephoned Kaneko, who asked the DSS attorney to move for temporary

 custody of the children. Upon this motion, a judge issued an order for nonsecure

 custody.

¶ 11 While Glover and Pulliam were still at the mobile home, Defendant arrived.

 Pulliam testified that she recognized Defendant as the same man who had chased
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 her and Glover earlier that day. Defendant cursed and shouted at Glover and the

 law enforcement officers as Glover put the children into the car. Video from a body

 camera worn by one of the officers captured Defendant saying while facing Glover,

 “You might die tonight.” Defendant asked Glover where she was taking the children,

 and Glover replied that she could not disclose that information. Glover drove to the

 Rockingham County Sherriff’s Department to retrieve the non-secure custody order.

 Defendant and Whetsell also drove to the Sheriff’s Department in his BMW. Glover

 and Pulliam, now accompanied by Sheriff’s Deputy Carter, then drove to a foster

 home agency in Guilford County to drop off the children.

¶ 12 Around 10:30 p.m., Glover and Pulliam returned to DSS to retrieve their

 personal vehicles. Soon thereafter, Defendant and Whetsell arrived in Defendant’s

 BMW. Deputy Carter told them to leave. After they left, Glover and Pulliam began

 driving to their respective homes, each with a law enforcement escort. Pulliam made

 it safely home. The officer escorting Glover home to Burlington followed her to the

 Rockingham County line, where he turned around.

¶ 13 At some point, Defendant and Whetsell returned to the mobile home and

 retrieved Whetsell’s nine-millimeter loaded handgun. Whetsell put the gun in her

 purse. Whetsell testified that she assumed Defendant knew she had the handgun in

 her purse because she usually kept it with her.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

¶ 14 Defendant and Whetsell left the mobile home and began driving on Highway

 87 toward Burlington, the same direction Glover was driving. Whetsell testified that

 they were not initially following Glover but were on their way to Raleigh to hire a

 lawyer. Whetsell recognized Glover’s car and directed Defendant, who was driving,

 to follow Glover. Whetsell testified that Defendant followed Glover because he knew

 that Whetsell was angry and “wanted to get at” one of the DSS social workers. As

 Defendant and Whetsell neared Glover’s car, Whetsell took her handgun out of her

 purse and set it on her lap.

¶ 15 Defendant followed Glover into a parking lot. While Defendant was chasing

 Glover around the parking lot, Whetsell fired her handgun at Glover, shattering the

 driver’s side rear window of Glover’s car. Whetsell testified that when shooting at

 Glover, she wanted to hit her. Whetsell did not hit Glover, however, and Glover was

 physically uninjured. Glover called 911 and drove to the Burlington police station.

 Glover identified Defendant by name to the police as the person who had shot at her.

¶ 16 After the shooting, Defendant dropped Whetsell off in a nearby neighborhood.

 Whetsell took her purse, with the handgun inside, with her. Whetsell told Defendant

 to return to Reidsville and switch out his car for hers. Defendant drove to Reidsville

 where he switched his BMW with a car that Whetsell did not recognize and returned

 to Burlington to pick up Whetsell. The couple then drove to Reidsville, intending to

 switch the car with Whetsell’s car, but their house was surrounded by law
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 enforcement. They retrieved Defendant’s BMW instead. Whetsell testified that

 Defendant disposed of the handgun “somewhere in Reidsville.” Law enforcement

 never recovered it.

¶ 17 Defendant and Whetsell drove to Myrtle Beach, South Carolina. On or about

 15 June, South Carolina law enforcement arrested them and they were brought back

 to North Carolina.

¶ 18 Defendant testified and maintained throughout trial that he was not in the car

 when Whetsell shot at Glover. According to Defendant, he was in Reidsville at the

 time caring for his great aunt. Defendant’s cousin Alexis Slade testified that she was

 with Defendant at their great aunt’s house on the night of the shooting and was there

 with Defendant around 10:00 p.m. when they put their aunt to bed and when she

 went to bed herself. Defendant’s cousin Monique Barnett testified that Whetsell told

 Barnett she was solely responsible for the shooting.

¶ 19 Whetsell pled guilty to assault with a deadly weapon with intent to kill and

 discharging a firearm into an occupied moving vehicle, and agreed to testify truthfully

 against Defendant.2 In exchange, the State dropped the attempted first-degree

 murder charge against her. During trial, the State introduced a certified copy of

 Defendant’s federal court records showing felony convictions for distributing cocaine.

 2 While awaiting trial, Whetsell signed an unsworn statement wherein she claimed she acted

 alone when she shot at Glover. Whetsell later testified the statement was false.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

¶ 20 The jury returned guilty verdicts on all charges.

¶ 21 The trial court entered judgments upon the jury’s verdicts, sentencing

 Defendant to consecutive prison terms of 180 to 228 months for attempted first-

 degree murder, 73 to 100 months for discharging a weapon into an occupied moving

 vehicle, 29 to 47 months for assault with a deadly weapon with intent to kill, and 14

 to 26 months for possession of a firearm by a felon. Defendant appealed.

 II. Discussion

¶ 22 Defendant contends the trial court erred in its instruction on constructive

 possession, the trial court erred in its instruction on attempted first-degree murder,

 and that his due process rights were violated by a year-long delay in processing his

 appeal.

 A. Constructive Possession Instruction

¶ 23 Defendant first argues that “[t]he trial court erred or plainly erred by

 instructing on constructive possession of a firearm by a felon, when that theory was

 not supported by the evidence.” Defendant mischaracterizes the instruction he

 challenges, and his argument is without merit.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 1. Preservation

¶ 24 As a threshold matter, we address the State’s contention that Defendant

 argued a different ground for his objection at trial than he does on appeal and thus,

 the argument he makes on appeal is unpreserved. We agree.

¶ 25 During the charge conference, the court engaged the parties in a lengthy

 discussion about the constructive possession instruction. Defendant, through

 standby counsel,3 objected to the instruction, stating, “For the offense of possession

 of a firearm by a felon has to be actual physical possession. . . . So we object to a

 constructive possession charge in toto, since the actual possession is covered in the

 offense of possession of a firearm by a felon.” Defendant now argues that because no

 firearm was found in this case, the constructive possession instruction was

 unsupported by the evidence.

¶ 26 Our courts have long held that where a theory argued on appeal was not raised

 before the trial court, “the law does not permit parties to swap horses between courts

 in order to get a better mount . . . .” Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838

 (1934). Defendant’s argument that the constructive possession instruction was

 unsupported by the evidence, made for the first time on appeal, is not preserved for

 our review. However, as Defendant “specifically and distinctly” contends the

 3 Defendant represented himself at trial with an attorney as standby counsel. With
 the consent of Defendant, standby counsel acted as counsel during the charge conference.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 instruction amounted to plain error, we review for plain error. N.C. R. App. P.

 10(a)(4).

¶ 27 To show plain error, Defendant must demonstrate that a fundamental error

 occurred at trial. State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

 “To show that an error was fundamental, a defendant must establish prejudice—

 that, after examination of the entire record, the error had a probable impact on the

 jury’s finding that the defendant was guilty.” Id.

 2. Analysis

¶ 28 The trial court instructed the jury on constructive possession in conformity

 with N.C.P.I. Crim–104.41 as follows:

 If you find beyond a reasonable doubt that an article was
 found in close proximity to the defendant, that would be a
 circumstance from which, together with other
 circumstances, you may infer that the defendant was
 aware of the presence of the article and had the power and
 intent to control its disposition or use.

¶ 29 Defendant first erroneously argues that this instruction was given “[a]s part of

 the instruction on possession of a firearm by a felon[.]” It was not. This instruction

 was given as part of the introductory general instructions–which included, among

 others, instructions on the presumption of innocence, the definition of reasonable

 doubt, and the jury members as the sole judges of credibility–preceding specific

 instructions on the specific charges Defendant faced. Defendant also erroneously
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 argues that “[t]he trial court erred by instructing the jury that Mr. Neal’s possession

 of the firearm could be inferred from its being found in close proximity to the

 defendant’s person.” The trial court did not so instruct. The above general

 instruction on constructive possession does not reference a firearm; it is a correct

 statement of the law of constructive possession and refers generally to “an article.”

 See State v. Bradshaw, 366 N.C. 90, 93-94, 728 S.E.2d 345, 348 (2012) (“It is well

 established that possession may be actual or constructive. . . . A defendant

 constructively possesses contraband when he or she has the intent and capability to

 maintain control and dominion over it.” (quotation marks and citations omitted)).

¶ 30 The entirety of the trial court’s specific instruction on possession of a firearm

 by a felon, which appears more than seven transcript pages after the general

 constructive possession instruction, is as follows:

 The defendant has been charged with possessing,
 having within defendant’s custody, care, control a firearm
 after having been convicted of a felony. For you to find the
 defendant guilty of this offense, the State must prove two
 things beyond a reasonable doubt.

 That on December 9, 2009 in United States District
 Court for the Middle District of North Carolina, the
 defendant was convicted of the felony of conspiracy to
 distribute crack cocaine and distribution of crack cocaine
 that was committed between 1988 up to and including
 December 19, 1994 in violation of the laws of the United
 States.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 And second, that after December 9, 2009, the
 defendant possessed, had within defendant’s custody, care,
 control a firearm.

 This instruction conforms with N.C.P.I.–Crim 254A.11, possession of a firearm by a

 felon, is an accurate statement of the law, and is supported by the evidence. See

 Bradshaw, 366 N.C. at 93, 728 S.E.2d at 347-48 (“To convict defendant of possession

 of a firearm by a felon the state must prove that (1) defendant was previously

 convicted of a felony and (2) subsequently possessed a firearm.”) (citing N.C. Gen.

 Stat. § 14-415.1(a)). The trial court did not err, much less plainly err, in its

 instruction on constructive possession or its instruction on possession of a firearm by

 a felon.

¶ 31 Moreover, even if the inclusion of a general constructive possession instruction

 was given in error, after a review of the entire record, we cannot say that the

 challenged jury instruction “had a probable impact on the jury’s finding that the

 defendant was guilty.” Lawrence, 365 N.C. at 518, 723 S.E.2d at 334. Defendant’s

 argument is overruled.

 B. Attempted First-Degree Murder Instruction

¶ 32 Defendant next argues that the trial court erred when it instructed the jury on

 attempted first-degree murder, in conformity with N.C.P.I.–Crim 206.17A, that it
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 could infer that the defendant acted unlawfully and with malice if it found that “the

 defendant intentionally inflicted a wound upon the victim with a deadly weapon.”

 1. Preservation

¶ 33 The State argues Defendant invited any error and waived appellate review by

 affirmatively approving of the contents of the instruction he now challenges.

 Defendant argues he sufficiently objected at trial to the instruction, or, in the

 alternative, he specifically and distinctly contends on appeal that the instruction

 amounted to plain error.

¶ 34 With regard to invited error, “[a] criminal defendant will not be heard to

 complain of a jury instruction given in response to his own request.” State v. McPhail,

 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991). In State v. Wilkinson, 344 N.C. 198,

 474 S.E.2d 375 (1996), defendant submitted a proposed jury instruction in writing to

 the trial court. The trial court changed one word in the instruction, and defendant

 stated that he had no objection to this change. Id. at 213, 474 S.E.2d at 383. On

 appeal, defendant argued that the instruction was erroneous. Explaining that the

 Supreme Court “has consistently denied appellate review to defendants who have

 attempted to assign error to the granting of their own requests[,]” the Court

 concluded that defendant had invited the error by actively requesting the court to

 include an instruction that he later claimed prejudiced him. Id.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

¶ 35 In this case, Defendant did not request the jury instruction he now challenges

 on appeal. Accordingly, Defendant did not invite error or waive appellate review of

 this issue. Defendant did, however, fail to properly object to the instruction, raising

 only a vague question as to its contents during the charge conference. A short time

 later, the court asked if Defendant was satisfied with the substantive law provided

 in the instruction; Defendant, through standby counsel, responded, “[I]t’s a pattern

 jury instruction, and I’m sure it’s been looked at by people much smarter than me.”

 Defendant did not object further. Accordingly, Defendant has failed to preserve the

 issue for appellate review. As Defendant “specifically and distinctly” contends the

 instruction amounted to plain error, we review for plain error. N.C. R. App. P.

 10(a)(4).

 2. Analysis

¶ 36 The trial court included the following instruction on attempted first-degree

 murder in conformity with N.C.P.I.–Crim 206.17A:

 The defendant has been charged with attempted first
 degree murder. For you to find the defendant guilty of this
 offense, the State must prove two things beyond a
 reasonable doubt.

 First, that the defendant intended to commit first degree
 murder.

 And second, that at the time the defendant had this intent,
 he performed an act which was calculated and designed to
 accomplish the crime, but which fell short of the completed
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 crime. Mere preparation or mere planning is not enough
 to constitute such an act, but the act need not be the last
 act required to complete the crime.

 First degree murder is the unlawful killing of a human
 being with malice, with premeditation[,] and with
 deliberation. Malice means not only ill will or spite, as it
 is ordinarily understood, to be sure that is malice. But it
 also means the condition of mind which prompts a person
 to take the life of another intentionally or to intentionally
 inflict serious bodily harm which proximately results in her
 death without just cause, excuse or justification.

 If the state proves beyond a reasonable doubt that the
 defendant intentionally inflicted a wound upon the victim
 with a deadly weapon, you may infer first, that the
 defendant acted unlawfully and second, that it was done
 with malice, but you are not compelled to do so. You may
 consider this along with all other facts and circumstances
 in determining whether the defendant acted unlawfully
 and with malice.

 (Emphasis added).

¶ 37 Defendant contends that the instruction was erroneous because no evidence at

 trial supported that Glover was physically wounded during the shooting. Defendant

 further argues that the instruction rises to the level of plain error in that it allowed

 the jury to infer malice, an essential element of first-degree murder, from

 circumstances not supported by the evidence. Even if the instruction introduced an

 extraneous matter and was thus given in error, Defendant has failed to show that the

 error had a probable impact on the jury’s finding that the defendant was guilty.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

¶ 38 The instruction placed the burden on the State to “prove[] beyond a reasonable

 doubt” that Defendant intentionally inflicted a wound upon Glover with a deadly

 weapon before the jury was permitted to infer that Defendant acted unlawfully and

 with malice. As Defendant points out, there was no evidence before the jury that

 Glover was wounded during the shooting. As the State could not meet its burden of

 proving that Defendant intentionally inflicted a wound upon Glover, the jury was not

 permitted to infer that Defendant acted unlawfully and with malice. We assume the

 jury followed the court’s instructions. See State v. White, 343 N.C. 378, 389, 471

 S.E.2d 593, 599 (1996).

¶ 39 After examination of the entire record, we cannot say that challenged jury

 instruction “had a probable impact on the jury’s finding that the defendant was

 guilty.” Lawrence, 365 N.C. at 518, 723 S.E.2d at 334. Accordingly, the trial court’s

 instruction on attempted first-degree murder was not plainly erroneous.

 C. Due Process Right to a Speedy Appeal

¶ 40 Finally, Defendant argues that he was deprived of his constitutional due

 process right to a speedy appeal when the court reporter requested ten extensions of

 time to produce the trial transcript.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 1. Standard of Review

¶ 41 We review alleged violations of constitutional rights de novo. State v. Graham,

 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).

 2. Analysis

¶ 42 For speedy appeal claims, “undue delay in processing an appeal may rise to the

 level of a due process violation.” State v. China, 150 N.C. App. 469, 473, 564 S.E.2d

 64, 68 (2002) (quotation marks and citation omitted). In determining whether a

 defendant’s constitutional due process rights have been violated by a delay in

 processing an appeal, we consider the following factors as set out in Barker v. Wingo,

 407 U.S. 514, 530-32 (1972): “(1) the length of the delay; (2) the reason for the delay;

 (3) defendant’s assertion of his right to a speedy appeal; and (4) any prejudice to

 defendant.” China, 150 N.C. App. at 473, 564 S.E.2d at 68 (citing State v. Hammonds,

 141 N.C. App. 152, 158, 541 S.E.2d 166, 172 (2000)). No one factor is dispositive; the

 factors are related and are considered with other relevant circumstances. Id.

 a. Length of Delay

¶ 43 “[L]ower courts have generally found postaccusation delay ‘presumptively

 prejudicial’ at least as it approaches one year.” Doggett v. United States, 505 U.S.

 647, 652, n. 1 (1992). The one-year delay in processing Defendant’s appeal is thus
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 sufficient to trigger review of the remaining Barker factors. Hammonds, 141 N.C.

 App. at 164, 541 S.E.2d at 175.

 b. Reason for Delay

¶ 44 “[T]he burden is on the defendant to show the delay resulted from intentional

 conduct or neglect by the State.” State v. Berryman, 360 N.C. 209, 220, 624 S.E.2d

 350, 358 (2006). Even if none of the delay is attributable to defendant, that does not

 necessarily make the delay attributable to the State. See Hammonds, 141 N.C. App.

 at 164, 541 S.E.2d at 176. In Hammonds, as here, defendant argued that he had been

 denied a timely appeal due to the court reporter’s delay in finishing the transcript.

 Id. at 164, 541 S.E.2d at 175. This Court stated, “Although none of the delay is

 attributable to defendant, in light of the fact that this Court consistently approved

 the reporter’s requests for extensions of time, we are equally unable to find that the

 delay is attributable to the prosecution.” Id. at 164, 541 S.E.2d at 176. As in

 Hammonds, the delay in this case was due to neutral factors, and Defendant failed

 to carry his burden to show delay due to neglect or willfulness of the State. See id. at

 161, 541 S.E.2d at 174. Accordingly, the court reporter’s delay in the instant case

 does not weigh in Defendant’s favor with respect to the second Barker factor.

 c. Defendant’s Assertion of the Right

 A defendant’s assertion of his speedy appeal right “is entitled to strong

 evidentiary weight in determining whether the defendant is being deprived of the
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 right.” Id. at 162, 541 S.E.2d at 174 (quoting Barker, 407 U.S. at 531-32). Conversely,

 a defendant’s failure to assert a violation of his due process rights will not foreclose

 his claim, but does weigh against him. Id. (citing State v. Flowers, 347 N.C. 1, 28,

 489 S.E.2d 391, 407 (1997)). Nothing in the record before us indicates that Defendant

 asserted his right to a speedy appeal prior to his brief on appeal. Defendant states in

 his brief that he “has frequently communicated with undersigned counsel and has

 repeatedly expressed his desire that his appeal be pursued.” However, his failure to

 formally and affirmatively assert his speedy appeal right weighs against his

 contention that he has been unconstitutionally denied a speedy appeal. See State v.

 Webster, 337 N.C. 674, 680, 447 S.E.2d 349, 352 (1994).

 d. Prejudice to Defendant

¶ 45 Finally, we consider Defendant’s allegations of prejudice in light of the

 interests protected by the right to a speedy appeal: “(i) to prevent oppressive pretrial

 incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit

 the possibility that the defense will be impaired.” China, 150 N.C. App. at 475, 564

 S.E.2d at 69 (citation omitted). “Courts will not presume that a delay in prosecution

 has prejudiced the accused. The defendant has the burden of proving the fourth
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

 factor.” State v. Hughes, 54 N.C. App. 117, 120, 282 S.E.2d 504, 506 (1981) (citations

 omitted).

¶ 46 Concerning the first two interests, Defendant asserts that his incarceration

 during the Covid-19 pandemic was “uniquely stressful and oppressive.” Concerning

 the third interest, Defendant argues that the delay diminished his memory of the

 events and hindered his ability to correct mistakes in the transcript, thereby

 prejudicing his appeal.

¶ 47 Defendant’s “[g]eneral allegations of faded memory are not sufficient to show

 prejudice resulting from delay[.]” State v. Heath, 77 N.C. App. 264, 269, 335 S.E.2d

 350, 353 (1985), rev’d on other grounds, 316 N.C. 337, 341 S.E.2d 565 (1986).

 Defendant has failed to show that evidence lost by delay was significant and would

 have been beneficial. See State v. Jones, 98 N.C. App. 342, 344, 391 S.E.2d 52, 54-55

 (1990) (“[T]he test for prejudice is whether significant evidence or testimony that

 would have been helpful to the defense was lost due to delay[.]”). Further, “the

 transcript eventually prepared and made available to the parties was adequate to

 allow full development of appeal issues.” Hammonds, 141 N.C. App. at 165, 541

 S.E.2d at 176. Acknowledging Defendant’s allegation of stress caused by

 incarceration during the pandemic, Defendant has failed to show prejudice resulting

 from the delay.
 STATE V. NEAL

 2021-NCCOA-565

 Opinion of the Court

¶ 48 After balancing the four factors set out above, we hold that the delay in

 processing Defendant’s appeal did not rise to the level of a due process violation.

 III. Conclusion

 The trial court did not err or plainly err in its instruction on constructive

 possession, and did not plainly err in its instruction on attempted first-degree

 murder. Further, Defendant’s Constitutional due process rights were not violated by

 the court reporter’s delay in producing the trial transcript.

 NO ERROR; NO PLAIN ERROR.

 Chief Judge STROUD and Judge DIETZ concur.